## WICKS *et al.* v. THOMPSON.

*(Supreme Court, General Term, Second Department.    February 11, 1891.)*

1. HIGHWAYS—DEDICATION—RIGHT OF WAY.

   W. devised land to S. and J., which was divided by a lane situated wholly on the land given to S.    According to the devise to J. his land was 10 feet east of the lane, but the evidence showed that W. had in his life-time widened the lane to make it come up to J.'s line.    S. subsequently fenced in the lane on both sides, but afterwards removed the fences, and widened it to 60 feet by survey, making it extend not up to, but within a few feet of, J.'s line.    W. and J. and S. for over 50 years used the road to gain access to J.'s land, and S., who laid it out, advised persons to buy land from J., to which they would have had no access if the strip remained between

the land and the road. Afterwards the devisees of S. built a fence on the line of the survey, shutting off J.'s land from the road. *Held*, that the road was dedicated up to J.'s line.

2. SAME—TITLE BY PRESCRIPTION.
    J., and those claiming under him, had a right of way by prescription to their land through the road.

Appeal from special term.

Action of trespass by Alonzo A. Wicks and others against Albert D. Thompson. One Joshua Wicks formerly owned a tract of land, which he devised to his sons, James and Selah. Plaintiffs are the devisees of Selah, and defendant the grantee of the devisees of James. During the life-time of Joshua the land was divided by a farm lane, situated wholly upon the land subsequently devised to Selah, the land devised to James adjoining it on the west, 10 feet from the west line of the lane according to his devise; but the testimony showed that Joshua Wicks widened the road in his life-time, and made it extend to the line of James' land. James always used this lane to get to his land, as also did his successors after him. Subsequently Selah Wicks fenced in the lane on both sides. Afterwards he had the lane surveyed, and widened it to 60 feet, making a highway of it, called "Maple Avenue," and took down the fence, leaving it open up to James Wicks' land, though, according to the survey, the land would not extend to James Wicks' land by a few feet. Subsequently the devisees of Selah Wicks built a fence on the line as surveyed, leaving a narrow strip between the lane and James Wicks' land. They claimed this strip, and the trespass complained of is that defendant, who had purchased part of the James Wicks tract, tore down part of the fence to gain access from the road into his land over this strip. Previous to the building of this fence by plaintiffs the lane, and afterwards the avenue, was used both by Joshua Wicks and Selah and James Wicks and their respective devisees for entrance to the lands on each side of it for a period of over 50 years. James Wicks sold some of his land with reference to this lane, and Selah Wicks, under whom plaintiffs claim, and who opened the road, advised people to buy land from James, knowing that they would have no access to the land so bought except through the road. There was a verdict and judgment for defendant, from which plaintiffs appeal.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*William G. Nicoll*, for appellants. *Wilmot M. Smith*, for respondent.

PRATT, J. This is an appeal from a judgment entered upon the verdict of a jury and from an order upon the motion of the judge denying a new trial. The record shows that the case was submitted to the jury under a charge as favorable to the plaintiffs as they were able to ask, and upon the issue as so made a verdict was rendered for the defendant. It is, I think, perfectly clear that Joshua Wicks, when the road was laid out through the land, intended to make the west line of the road the east line of the land devised to James Wicks, the prior owner of defendant's land. The proof shows that for the space of about 50 years the west side of the lane was the east side of said James Wicks' land. This was a practical location, and the possession and user by each party of the land upon their respective sides of this lane must be presumptive evidence of title. I think it is also clear that when, in 1879, Selah Wicks opened Maple avenue, he intended to and did open it up to James Wicks' land, so that, if the plaintiffs have any title as a basis for this suit, it is a varying strip, about six inches wide, upon which the fence stands. But the verdict was right, even upon this contention of the plaintiffs. It is plain that Selah Wicks made the west side of Maple avenue, which he dedicated to public use, so as to take in the whole lane as it existed at that time. It is absurd to suppose that he intended to reserve six inches on the west side of the avenue, as no good purpose can be attributed to such an intention, and his

whole conduct afterwards refutes any such claim. His declaration at the time of opening the avenue, that he did not intend to leave any land between the avenue and the land of his brother, and afterwards advising parties to build upon the west side of the avenue, makes it incredible that he did not intend to dedicate Maple avenue up to his brother's land. If such is the fact, then Maple avenue, for its whole length, was a public street, and the plaintiffs had no right to erect a fence on the west side, and the same, when erected, was a nuisance, and the defendant had a right to abate it. But, assuming that the fence stood upon the land of the plaintiffs, and that Maple avenue did not include the land upon which the fence stood, we think, under the proofs, the jury were justified in finding a verdict for the defendant. The trespass consisted in a use of the land as a right of way as it had been uninterruptedly used for over 50 years. It was a use that the common owner had made before it was devised to James Wicks, and by the latter for over 40 years. We think, therefore, the defendant had a right to use the whole roadway, and to enter upon it as he and his father before him had been in the habit of doing for more than 50 years. Judgment affirmed, with costs. All concur.